AUGUSTA KESSLER et al., complainants-appellants,

*v.*

EDWARD C. SHELDON et al., defendants-respondents.

[Submitted October term, 1925. Decided February 1st, 1926.]

1. In a suit to secure the delivery of a deed or establish its existence, testimony that a former employe of the estate of the alleged grantor admitted that he had seen the alleged deed was properly excluded although the employe had previously testified that no such instrument existed, there being nothing to show that the employe represented the estate.

2. Where nine years had elapsed since the youngest child of the alleged grantee had attained majority, and a much longer period since his widow was ousted, and the property had greatly increased in value, and been conveyed to *bona fide* purchasers, a suit to establish the existence of a deed or procure its delivery is barred by inexcusable laches, and evidence tending to prove the existence of such deed is irrelevant.

On appeal from a decree of the court of chancery.

*Mr. John W. Ockford,* for the complainants.

*Messrs. Stuhr & Vogt,* for the defendant Andrews.

*Mr. Theodore Rurode,* for the defendant Hagan.

*Mr. William F. Burke,* for the defendant Schrader.

The opinion of the court was delivered by

MINTURN, J.

The bill was filed by the widow and children, heirs-at-law of Stephen Kessler, deceased, to secure the delivery of a deed of conveyance, or to establish the existence thereof, as a lost or

suppressed instrument. The learned vice-chancellor, after hearing the testimony, dismissed the bill. The only question presented by the appeal is whether the court properly excluded testimony offered in behalf of complainants. The *locus in quo* consisted of three vacant lots on Central avenue, in Jersey City, originally the property of the estate of William B. Ogden. Kessler assumed possession of the premises under an alleged contract of purchase, executed about July 1st, 1885, from the Ogden estate, after which he built a store and other buildings thereon, and resided there until his death, at which time he left a will, and a widow and children, who together with an administrator *cum testamento annexo,* constitute the complainants in the bill of complaint.

It is alleged that Kessler, upon the strength of his agreement entered into possession of the *locus,* spent money upon its improvement, and made various payments totaling $10,000 upon the purchase price. The widow occupied the premises until 1897, when she was ousted as the result of proceedings in an action in ejectment, brought against her alone, by the executors of the Ogden estate. Shortly thereafter the executors conveyed the premises to one Schrader, whose heirs, in . 1922, conveyed a portion of the *locus* to one Hagan, who, with the Schrader heirs, constitute the present owners, and the defendants herein. The title to the *locus,* manifestly, was settled by the result of the ejectment suit, and neither the widow of Kessler nor his heirs-at-law attempted to vindicate their claim thereafter in any legal or equitable forum until this bill was filed.

The question presented upon this appeal is one of evidence, since no proof whatever was offered to evince the existence of any formal contract between Kessler and the Ogden estate, or to show that he ever paid anything upon the purchase price, or that he paid taxes or other public assessments upon the property; and the conspicuous facts presents itself that more than nine years were allowed to elapse after the youngest of the Kessler children became of age before the present bill was filed. Since the period of the alleged purchase in 1898 the property has risen in value by steady graduations from

$7,500 to $36,000 in 1914, when the youngest Kessler heir became of age, until 1923, when the bill was filed, and the property following the upward trend of the times had assumed the phenomenal valuation of $110,000, which doubtless gave to it a quality of inherent desirability, which it theretofore never possessed. Stephen Kessler, Jr., one of the Kessler heirs, as well as a complainant herein, was asked at the trial as to a conversation he had with one Andrews, who was also a defendant in the suit, having at one period been identified as an employe of the Ogden estate. The purpose of the inquiry was to elicit testimony to show that Andrews had admitted in a conversation with the witness that he had seen the alleged contract and a deed, between the deceased Kessler and the Ogden estate, and that as a fact such legal instrumnts were at one time in existence. Its ultimate effect would also have been to contradict Andrews, who had already testified that no such instrument existed. Assuming that he made such a statement it is not perceived in what manner it could establish the existence of the facts sought to be proved, in order to establish the fundamental allegations of the bill, since Andrews, by any admission he might make, could not bind the Ogden estate as it was not shown that he represented it or was identified as a party in interest in its holding, so as to bind it by admissions against interest. At most, therefore, it assumes the character of testimony which was essentially hearsay and therefore inadmissible to charge the Ogden estate. But the inadmissibility of the testimony is conspicuously apparent when it is recalled that regardless of its character and the source from which it emanates these complainants, by reason of laches in the assertion of their right, under the alleged contract and deed, occupy no legal or equitable status to avail themselves of its use or to profit by its relevancy.

For at least nine years after the youngest child of the deceased Kessler had attained majority, and for a much longer period since the action in ejectment against the mother had settled adversely at least to her the rights of the Ogden estate as owners in fee of the *locus in quo,* the complainants re-

mained idle and inactive, apparently, content with the legal status thus established, and only after many years had passed and when the Ogden estate had by mesne conveyances transferred their legal title to the present owners, who occupy the status of *bona fide* purchasers, and at a period when the present value of the property made its acquisition a prize in the real estate world, did they file their bill to assert their present claim.

The equitable rule under such circumstances, based upon well-settled principles of public policy, has been immutably established that such claims are barred by the inexcusable remissness of those who, when reasonable opportunity presented itself, failed and neglected to assert them. *Vigilantibus non dormientibus equitas subvenient. Hendrickson* v. *Hendrickson, 42 N. J. Eq. 657; Industrial Savings, &c., Co.* v. *Plummer, 84 N. J. Eq. 187; 10 R. C. L. 395,* and cases; *21 C. J. 193,* and cases.

It thus becomes manifest that conceding to the proffered testimony all the evidential efficacy which the complainants claim for it, its irrelevancy must be conceded when the fallacy underlying the complainants' claim of title is made apparent.

The decree appealed from will, therefore, be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, JJ.   15.

*For reversal*—None.